UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNIDEV, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-2649** |
| **THE HOUSING AUTHORITY OF NEW ORLEANS, CARMEN VALENTI, CATHERINE LAMBERG, LORI MOON AND JUSTIN ORMSBY, RECEIVER** | **SECTION "T" (1)** |

### ORDER AND REASONS

Before the Court is Defendants' Motion for Judgment on the pleadings pursuant to FRCP 12(c). Rec. Doc. 39. Plaintiffs filed an Opposition. Rec. Doc. 54. The Motion came for hearing, with oral argument on February 20, 2008, and was taken under submission. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence is fully advised in the premises and ready to rule.

### I. BACKGROUND

This action involves a dispute between UniDev, LLC (hereinafter, "UniDev") and its sole members, James Edmondson (hereinafter, "Edmondson") and Myron P. Curzan (hereinafter, "Curzan") and the Housing Authority of New Orleans (hereinafter, "HANO") as well as four of HANO's officers, relating to the redevelopment of the C. J. Peete housing complex in New Orleans, Louisiana.

The facts presented by the parties are voluminous and are stated in sum hereafter. In 1997, HANO wanted to redevelop the C. J. Peete housing complex using federal programs including the Hope VI program administered by the Department of Housing and Urban Development (hereinafter,

"HUD"). In the spring of that year, HANO advertised bids for a housing modernization project at C. J. Peete and issued Requests for Qualifications. The process called for demolition of approximately 900 units, with redevelopment of about 500 and new construction of 200 more. The redevelopment was to be funded by a HUD grant of 25 million. After a number of meetings between the parties, UniDev was selected as the plan developer. The Memorandum of Understanding (hereinafter, "MOU") was signed providing that it would govern the transaction until a development agreement could be signed.

For reasons which are alleged in the Complaint and explained hereinafter, UniDev never began physical construction on the C. J. Peete project.

The first line of business for UniDev was to secure a Hope VI grant. To meet this objective, UniDev allegedly drafted plans, met with architects, engineers, lawyers, etc. HANO and UniDev representatives also met on several occasions to discuss the grant. UniDev informed HANO that it was highly unlikely that the Hope VI grant would be forthcoming because in the early 1990's HANO received such grants for the Desire and St. Thomas housing complexes, but made no meaningful progress in using the grants. The HopeVI grant was rejected for the C. J. Peete housing complex in the summer of 1998.

In September 1998, HUD briefed UniDev on the requirements that HUD would impose on the Development Plan, and subsequently UniDev prepared a revised plan that would not rely on HOPE VI funds (i.e. Change #1). The Development Agreement (hereinafter, "DA") then being negotiated between HANO and UniDev, reflected the revisions made in the revised plan including but not limited to the number of proposed units and the schedule of construction. The DA needed approval by HUD before execution, which was given in August 1999. The DA was signed by

2

representatives of both parties on September 17, 1999. UniDev also applied for tax exempt bonds, low income hosing tax credits, and obtained LA1-002 historic designation.

In November 1999, HUD expressed reservations about Change #1 and subsequently worked with UniDev to come up with a new plan (i.e. Change #2). Under the changes, the plan was revised to meet the requirements of a mixed-financed project resubmitted to HANO. Ben Bell, the new HANO Executive Director, wanted additional changes which required an amendment to the terms of the DA. This never occurred, allegedly, because HANO kept renegotiating and requesting revisions.

New board leadership came to HANO in 2000. During that time, HANO reallocated some funding it had committed to C. J. Peete. The new director of the board (Dan Henson) sought new approaches such as using section 8 housing in the plan and reduction in density. Since one of the elements of financing was tax credits, the reduction in density would require more demolition of historic buildings. Therefore, UniDev alleges it had to reevaluate the demolition plan and seek approval from the state historic review office, which never occurred.

In 2001, HANO lost its Executive Director and Executive Monitor, but UniDev alleges it continued to seek amendment of the DA to reflect the revised terms of the plan concerning different financing, the different number of units and the change in the construction schedule. HANO requested further changes (i.e. Change # 3) in 2001 and UniDev submitted a Master Plan in October 2001.

In December 2001, several new people came on at HANO including, defendants Carmen Valenti and Dr. Lori Moon. In January 2002, Edmonson and Curzan met with Kermit Thomas, a lobbyist and consultant, who had connections with the office of Congressman Bill Jefferson, to

discuss the project. At that meeting, Thomas assured UniDev representatives of his good connections with HANO and others in New Orleans, as well as with HUD. He offered to play a role in facilitating the negotiations with HUD and HANO to obtain approvals. Subsequently, a meeting was set up at the First National Bank in New Orleans during which the president of the bank allegedly told UniDev to come up with a financing "wish list." Edmonson later requested Thomas and his team present a written proposal, which was never submitted. UniDev submits that it became apparent that these new participants did not want to provide financing for the project, but wanted to become consultants and partners without investing in the project.

In early 2002, HANO directed UniDev to stop working on all portions of the project except that portion of the Development Plan regarding historic tax credits and the subdivision process. Subsequently, UniDev was called to a meeting chaired by defendant Catherine Lamberg. At that meeting, HANO allegedly informed UniDev that HANO wanted to do a "turnkey" public housing development on the LA1-010 section of the C. J. Peete and wanted UniDev to bid that section out and in turn, have UniDev compete for the construction. UniDev refused to do so because they had been previously awarded the contract for the entire project. An agreement was later reached whereby a new proposal for the turnkey project was submitted in July 2002 as part of the originally contracted project (i.e. Change # 4). HANO then requested changes to UniDev's turnkey proposal, which were made to the alleged detriment of UniDev.

In September 2002, another MOU was executed under which HANO allegedly agreed to pay approved costs of planning the turnkey project. Subsequently in November, UniDev made a request to have HANO finalize the plan so construction could begin. No response was received.

On December 24, 2002, Lamberg, acting in her capacity as the Administrative Receiver of

4

HANO, executed a letter which terminated the DA for convenience pursuant to Section 8.01 of the General Conditions of the DA, which also contains the terms stipulating how UniDev was to be compensated in the event that a Termination for Convenience occurred.  In response to receiving Lamberg's letter, UniDev in January 2003, presented a claim for its costs, expenses and reasonable profits.  HANO was to notify UniDev of their acceptance of the claim within 30 days of receipt; however, HANO notified UniDev that the claim was not in proper form and demanded it be resubmitted. UniDev vehemently denies that the form was not properly presented, but nevertheless resubmitted the claim in the amount of $1, 576,628.00.  Despite federal express records providing that the revised claim was received and despite resending the claim a third time, UniDev submits that no payment was ever made.

In October 2003, UniDev forwarded to HANO additional correspondence requesting a meeting with HANO staff to review the claim and answer any questions.  HANO declined to conduct any meetings and responded with a letter asserting that they no longer had sufficient personnel in the financing department to review the claim.  HANO also provided that it intended to retain a third-party professional to review the claim and present his or her conclusions to HANO. HANO directed all further communications to be forwarded to its attorney.  UniDev submitted the claim to HANO's counsel in January 2004; however, Lamberg again responded that the claim was not in proper form.  In April 2004, UniDev put HANO on notice of its alleged default.

In June 2004, the parties finally met to conduct an "initial dispute" meeting.  Present at the meeting were HANO and UniDev representatives, as well as the newly-appointed HUD Administrative Receiver.  UniDev alleges that Section 8.03 of the DA provides that UniDev was entitled to notify HANO of a dispute and thereafter meet with HANO to negotiate a resolution of

the claim in good faith. UniDev admits that a meeting in accordance with section 8.03 was held in June 2004, but HANO did not conduct additional meetings despite many attempts to do so by UniDev.

UniDev also alleges that pursuant to section 8.04, HANO was obligated to engage in informal independent mediation. UniDev alleges that attempts to set up a mediation were made, arranged, but ultimately cancelled by HANO. Finally, HANO's lawyers informed UniDev that mediation was not possible because the claim had to be sent to HUD for review. UniDev never heard back.

This matter followed by UniDev only on June 28, 2005, asserting causes of action for: (1) breach of the DA/contract, (2) appointment of an independent mediator to resolve the dispute; and (3) bad faith and tortious interference with contract. Rec. Doc. 1 at pp. 15, 22, 24.

A First Amending and Supplementing Complaint was filed in December 2006, which reiterates the causes of action stated *supra* and adds Edmonson and Curzan (the sole members of the LLC) as plaintiffs to the aforementioned causes of action. Three new causes of actions are also asserted: (1) the alleged deprivation of rights under the privileges and immunities clause; (2) the alleged discrimination under 42 U.S.C.A. § 1981, and (3) a cause of action for civil conspiracy.

The instant Motion by all Defendants followed.

## II.    LAW AND ANALYSIS

### A.    FRCP 12(c) Standard

FRCP 12 ( c) provides that a party may move for judgement on the pleadings, after pleadings are closed but early enough not to delay trial. The standard for determining a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss, such that "the court accepts all

well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). The plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

### B. Claims Raised In The Complaints.

#### i. *Breach of Contract.*

Defendants first argue that the breach of contract claims by Edmonson and Curzan should be dismissed because they do not have privity of contract with HANO. Rec. Doc. 39 at p 5. Plaintiffs respond that since they are the sole members of the LLC, a hybrid form of corporate entity, that they can state a cause of action despite that they are not parties to the contract. Rec. Doc. 54 at pp. 9-11.

No action for breach of a construction contract may lie in the absence of privity of contract between the parties. *Louisiana Ins. Guar. Ass'n v. Rapides Parish Police Jury* 182 F.3d 326, 331 (5th Cir. 1999); *Rivnor Properties v. Herbert O'Donnell, Inc.*, 633 So.2d 735, 743 (La.Ct.App.1994). In the *Louisiana Ins. Guar. Ass'n.* case, the general contractor contracted with another entity which had a contract with the Parish Police Jury for work to be performed. The general contractor did not have a contractual relationship with the police jury and the Court found that because the general contractor lacked the contractual relationship with parish police jury required to recover under breach of contract claim, there was no privity and no cause of action. 633 So.2d at 743.

The Complaint and the First Amended Complaint at hand provide that the contract was entered into by HANO and UniDev, and makes no mention that the individual members of Unidev

bound themselves as individuals to the agreement. Accordingly, to the extent that the Plaintiffs are suing in their individual capacity for breach of contract claims, they lack contractual privity and cannot state a breach of contract claim. Furthermore, because this Court finds that contractual privity does not exists between HANO and the individual Plaintiffs, Edmonson and Cruzan have no right to assert their claim that UniDev is entitled to appointment of an independent arbitrator or mediator. Accordingly the Motion is **GRANTED** to the extent it seeks dismissal of the breach of contract claims by Edmonson and Cruzan.

The remaining breach of contract claims raised by UniDev against HANO (the actual parties to the DA). The Court finds that all of those breach of contract claims state a claim to survive this Motion except as regards the claim for breach of contract for failure to mediate. The DA provides in pertinent part:

> Article 8.04: Informal Mediation.
>
> If within 15 days of receipt of notice under Section 8.01 either party to said dispute has failed to participate in a meeting held in accordance with Section 8.03, or if the dispute has not been resolved to the satisfaction of said parties within such time, either of said parties **may** submit to an independent and impartial mediator mutually acceptable to said parties for informal mediation within (20) days after receipt of such notice. Such informal mediation shall consist of one meeting in New Orleans in which (a) each of said parties orally presents to the mediator the issue in dispute and the party's position with respect thereto; and (b) the mediator attempts to assist the said parties to reach a negotiated conclusion. Additional such meetings may be held as said parties agree to be appropriate.
>
> If, after a good faith attempt by the parties to such informal mediation, no resolution of the subject of such mediation is reached, said parties shall be free to pursue their remedies under Article IX.
>
> Article IX: Default Section 9.01
>
> Events of Default. Any of the following events shall constitute an "Event of Default" on the part of HANO or UniDev, as applicable: (a) HANO or UniDev shall default in the performance of any of its obligations under this Development Agreement… (b) HANO or UniDev (I) applies for or consents to the appointment of a receiver (c) An order, judgment or decree is entered by any court of competent jurisdiction adjudicating HANO…approving a receiver, trustee or liquidator of such party of any of its assets.

The Article provides that the parties **may** submit to arbitration, thus, there is no mandatory language obligating the parties to submit to informal mediation. Consequently, UniDev does not have a breach of contract claim under Section 8.04 and cannot put HANO in default for failing to mediate. Nevertheless, even if the language was mandatory rather than permissive, the parties agreed to attend a settlement conference with the Magistrate Judge that Moots this issue. Accordingly, the Motion to Dismiss is **GRANTED** as to any breach of contract claim against HANO for failing to invoke the mediation clause.

### ii.     *Bad Faith and Contractual Interference.*

Plaintiffs' Complaint asserts that the Defendants herein breached their duty of good faith and fair dealing in their contractual relations with the Plaintiffs while the contract was in place and after its termination. Because the Court has already found that the individual Plaintiffs have no contractual privity with the Defendants, this claims is also foreclosed as to the individual Plaintiffs. As to the allegations by UniDev, solely, Defendants urge that the allegations relate to the period after HANO terminated the contract for convenience and since a post-termination cause of action for lack of good faith does not exist because there is no longer any relationship between the parties it is entitled to dismissal. Rec. Doc. 39.

The Court has reviewed the Complaint and First Amended Complaint and is not convinced that all of the allegations for bad faith by HANO, accepting those as true for purposes of this Motion, are alleged to have occurred prior to the termination for convenience. Accordingly, the Motion is **DENIED** as to the alleged bad faith by HANO**.**

### *iii.* *Intentional Interference with Contract*

Defendants argue that in Louisiana the cause of action for intentional contractual interference is limited to a corporate officer's intentional interference. In *9 to 5 Fashions, Inc. v. Spurney* 538 So.2d 228 (La. 1989), the Supreme Court of Louisiana recogznied the duty on the part of a corporate officer to refrain from intentional interference with contractual relations between his corporation and other persons, unless there is a reasonable justification for his conduct. The Louisiana Supreme Court separated the elements for actions against a corporate officer for intentional and unjustified interference with contractual relations as follows:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*9 to 5 Fashions, Inc.*. 538 So.2d at 234. The court also found that this cause of action is inapplicable to one that is a party to the contract.

In the instant matter, HANO is a party to the contract at hand. Thus, Plaintiffs' claim that alleges that HANO intentionally interfered with its own contract is preposterous and is **DISMISSED.**

In regard to the individual Defendants, (Valenti, Lamberg, Moon and Ormsby) they allege Plaintiffs point to only post-termination conduct in support of their claims. Thus, the claims must fail because it is impossible to interfere with a terminated contract. Plaintiffs counter that its Complaint alleges interference by officers of HANO pre-termination; however, their Opposition Memorandum asserts that "[a]fter the termination for convenience clause was exercised by HANO,

10

the HANO officials Valenti, Lamberg, Moon and Ormsby ignored the Development Agreement's requirements for payment of the claim for expenses and ignored the obligation to mediate." Rec. Doc. 51 at p. 21.  The Complaint does not allege with any specificity the factors as to how each individual HANO named officer acted and in fact makes only conclusory allegations that these Defendants had anything to do with the contract.  The Complaints provide only that these Defendants worked for HANO; and does not describe how they would have violated the DA. Further, with regard to Moon, Lamberg and Ormbsy, the Complaint is silent other than providing: that Moon worked at HANO, Rec. Doc. 1 at ¶ 31; that Ormsby's alleged dealings with UniDev were years after the termination, Rec. Doc. 1 at ¶ 1(4); and Lamberg worked at HANO.  Rec. Doc. 1 at ¶ 33).  No allegations are made on the parts of Dr. Moon, Mr. Ormsby or Ms. Lamberg that any of them engaged in (1) pre-termination interference which (2) resulted in HANO breaching the contract. Absent allegations of both those elements, no interference claim lies.  Thus, the Motion to Dismiss the intentional interference with contract claims against these Defendants is **GRANTED.**

As to Valenti, Plaintiffs' Opposition focuses on her actions with HANO pre-termination. Specifically, the Opposition points out that Valenti told UniDev to bid for the turnkey housing project that Valenti never had any intention of implementing.  According to Plaintiffs, this project was designed to provoke UniDev into bailing out of the C. J. Peete project so that HANO could award the project to some other developer.  Rec. Doc. 51 at p. 21.  Defendants' reply argue that these allegations are not sufficient because there is no allegation or evidence of "inducement." Rec. Doc. 55 at p. 5. After reviewing the allegations, the Court finds that, while close, they are sufficient to state a claim for pre-termination intentional interference with contract by Valenti.  Such allegations, if untrue, can later be disposed of on summary judgment.  Accordingly, the Motion is

**DENIED** as to the claims for intentional interference with contract by Valenti.

### *iv.    The 1983 Claims.*

Pursuant to Section 1983, only those "persons" who act under the color of state law are liable.  As such, in *Cheramie v. Tucker,* 493 F.2d 586 (5th Cir. 1974), the U.S. Fifth Circuit held that the states and their political subdivisions as well as various arms of states, are not "persons" within the meaning of 42. U.S.C. § 1983 and therefore, have no liability.  There, the issue was whether the Department of Highways could be liable under section 1983 and the court found that because they were an arm of the state, they were not a "person" subject to Section 1983 liability. *Cheramie*, 493 F.2d at 588.

Judge Fallon, in his November 2006 Order and Reasons, found that under La. Rev. Stat. 40:384(16), HANO, as a local housing authority, is a "public body, corporate and politic" that is a "political subdivision of [the] state." Rec. Doc. 27.  Order and Reasons Denying Defendants' Motion to Dismiss under 12(b)(1).  Further, Plaintiffs' Complaint alleges that HANO is a political subdivision of the state and HANO admits this fact.  See Rec. Doc. 1 at ¶ 2 and Rec. Doc. at ¶ Accordingly, because HANO is a political subdivision, it is not a "person" within the meaning of Section 1983 and thus, the Motion to dismiss the section 1983 claims against it is **GRANTED** and the claims dismissed.

Turning to the individual Defendants, they argue that the Plaintiffs do not have standing to sue them under section 1983.  The Fifth Circuit in *Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. 1981), was faced with the issue of whether four individual plaintiffs, who filed suit as shareholders of First Bank of Macon, had standing as the real parties in interest.  The district court held that "neither officers nor stockholders ... can maintain an action to redress an injury to the corporation

even though the value of their stock is impaired as a result of the injury." *Gregory,* 634 F.2d at 202. The Fifth Circuit affirmed and noted that this rule has been firmly established and has been extended to Civil Rights actions brought under section 1983 by shareholders claiming injury to the corporation.[1] In the instant matter, Plaintiffs cite no law to support their contention that a limited liability company and its members are not treated the same as the corporation in *Gregory*. Accordingly, the individual Plaintiffs lack standing to sue the individual defendants for violations under section 1983 claims are **DISMISSED.**

The only remaining section 1983 claim is that raised by UniDev, LLC against the individual Plaintiffs. Defendants argue that the claims are deficient because they do not allege personal involvement and are conclusory in their allegations of custom, policy, pattern or practice. Rec. Doc. 39 at pp. 13-16. UniDev argues that it has stated enough facts in support of its claims that these individual Defendants, acting under the color of state law, violated their section 1983 rights. Rec. Doc. 51 at pp. 27-31. Plaintiffs also suggest that a motion to dismiss those claims now is premature because additional discovery will prove the section 1983 claims. *Id.* The Court has reviewed the Complaints and arguments of the parties and finds that there are sufficient facts, assumed as true, that state a section 1983 claim against the individual Defendants by UniDev. Thus, the Motion is **DENIED** on these claims.

---

[1] *Schaffer v. Universal Rundle Corporation,* 397 F.2d 893 (5th Cir. 1968) (involving an action for breach of contract and violations of the Sherman Anti-Trust Act and Robinson-Patman Price Discrimination Act); *Smith v. Martin,* 542 F.2d 688, 690 (6th Cir. 1976), cert. denied, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 388 (1977), (**"**The district court was correct in its holding that a stockholder cannot maintain an action under the Civil Rights Act for damages suffered by a corporation in which he owns shares.**"**), citing *Erlich v. Glasner,* 418 F.2d 226 (9th Cir. 1969) (involving a s 1983 claim for damages to a corporation).

### v.     The 1981 Claims.

Defendant argues that section 1983 provides the exclusive federal damages remedy for the violation of rights guaranteed by section 1981 when the alleged violation is by a state actor. Plaitniff counters that section 1983 is not the exclusive remedy but rather provides for the applicable damages when section 1981 is violated; therefore, the section 1981 claims can proceed.

Defendants are correct that the United States Supreme Court held in *Jett v. Dallas Independent School Dist.* 491 U.S. 701, 109 S.Ct. 2702 (1989) that a municipality may not be held liable for its employees' violations of section 1981 under respondeat superior theory, but rather that section 1983 provides the exclusive federal damages remedy for rights guaranteed by section 1981 when the alleged violation is by a state actor. However, *Jett* may have been superseded by statute in 1991 when Congress revised § 1981. *See Lopez v. City of Dallas,* 2005 WL 1131181, *3 (N.D.Tex. 2005). The district courts in this Circuit have split on this issue and the Fifth Circuit has not addressed this matter. *Id.* Nevertheless, for the same reasons discussed *supra* dismissing the individual Plaintiffs section 1983 claims, those reasons apply to dismissing the section 1981 claims by the individual Plaintiffs against the Defendants; thus, the Motion to Dismiss the section 1981 claims by Edmonson and Cruzan against the Defendants is **GRANTED.** Further, the Court has already decided that there is not any state action by HANO, so the section 1981 claims against HANO also fail. As to the remaining section 1981 claim by UniDev against the individual Defendants, in the absence of authority in this Circuit to the contrary, the Court is bound to follow *Jet* and finds that UniDev's claims against the individual defendants is precluded because section 1983 provides the exclusive remedy and the Motion is **GRANTED.**

### *vi.* *LSA-CC article 2324.*

LSA-CC art. 2324 provides:

> A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
>
> B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23: 1032, or that the other person's identity is not known or reasonably ascertainable.
>
> C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.

Under Louisiana law, an independent cause of action for civil conspiracy does not exist; rather, the actionable element of article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury. See *Ryhce v. Martin*, 173 F.Supp. 2d. 521, 535 (E.D. La, 2001). In other words, LSA-CC art. 2324 does not create a cause of action for civil conspiracy. Such an action would be found under the General Tort law principles found in LSA-CC art 2315. Contrary to Plaintiffs' arguments, this statute does not create a conspiracy cause of action, but only establishes how the damages will be apportioned in the event a conspiracy to commit an intentional tort or will ful act is proved. Because Plaintiffs' have failed to state a claim for any intentional tort or willful act by any Defendants triggering the solidary liability under LSA-CC art 2324, the Motion is **GRANTED** and the claim dismissed.

### III.     CONCLUSION

For the foregoing reasons the Court finds: (1) that the individual Plaintiffs do not have a standing to assert breach of contract claims against the Defendants and those claims are dismissed; (2) the breach of contract claim for failure to mediate is Moot; (3) the Motion is denied as to the alleged bad faith by HANO;  (4) the intentional interference with contract claims are dismissed as to all Defendants but Valenti; (5) the section 1983 claims against HANO are dismissed; (5) the section 1983 claims against the individuals may proceed by UniDev only; (6) the section 1983 claims by the individual plaintiffs are dismissed; (7) the section 1981 claims are dismissed; and (5) the civil conspiracy claims are dismissed.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Judgement on the Pleadings  (Rec. Doc. 39) is **GRANTED** in part and **DENIED** in part in accordance with this Order.

New Orleans, Louisiana this 2nd day of April, 2008.

_____
**UNITED STATES DISTRICT JUDGE
G. THOMAS PORTEOUS, JR.**